IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WILLIAM E. BRYANT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-12-288-D |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER, SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Plaintiff William E. Bryant seeks insurance benefits based on a disability. The administrative law judge had a duty to explain his evaluation of Mr. Bryant's complaints. The judge did so, but used boilerplate language to summarize his assessment. That language creates the primary question in this case: Is the ALJ's use of a boilerplate sentence fatal when he goes on to explain his rationale?

The answer is *no*. The use of a boilerplate sentence is not fatal because the ALJ explained why he was discounting Mr. Bryant's complaints.

I.   Mr. Bryant's Claims

The Plaintiff seeks reversal of the administrative decision, claiming that: (1) the ALJ failed to adequately explain his rationale for the credibility assessment, and (2) exclusive reliance on the grids constitutes legal error. These claims are invalid.

II.   The Determination of Residual Functional Capacity

Mr. Bryant criticizes the judge for use of this boilerplate sentence in the credibility findings:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.[1]

Mr. Bryant's criticism is based on condemnation of this language by the Seventh Circuit Court of Appeals in *Bjornson v. Astrue*.[2] The Plaintiff's criticism is misguided.

A.   The Need for Explanation

Like the Seventh Circuit, the Tenth Circuit Court of Appeals has condemned the use of boilerplate language in social security decisions.[3] But when ALJs elsewhere explain the assessments, their use of boilerplate language is not fatal.[4]

---

[1]   R. at p. 20.

[2]   *Bjornson v. Astrue*, 671 F.3d 640, 646 (7th Cir. 2012).

[3]   *See, e.g.*, *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001) (noting that the Tenth Circuit Court of Appeals has condemned the practice of boilerplate recitation of law and has insisted that "an ALJ give specific reasons why he or she rejects a claimant's subjective complaint of pain" (citation omitted)).

[4]   *See Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004) (stating that boilerplate language is insufficient to support a credibility determination only "in the absence of a more thorough analysis"); *see also Kruse v. Astrue*, 436 F. App'x 879, 887 (10th Cir. 2011) ("boilerplate language is insufficient to support a credibility determination only 'in the absence of a more thorough analysis'" (citation omitted)).

B.    Sufficiency of the ALJ's Explanation

The judge set forth his reasons by referring to the medical evidence and addressing the relevant factors. Inclusion of one boilerplate sentence does not undo the judge's explanation.

Medical Evidence

The administrative law judge discussed the medical evidence,[5] reasoning that four physicians (Doctors Wienecke, Hensley, Graham, and Rees) had expressed opinions that supported an ability to perform light work.[6]

The judge's reliance on these opinions was reasonable.

*Light work* involves the ability to lift up to 20 pounds at a time, frequently lift or carry items weighing up to 10 pounds, and stand or walk up to about 6 hours in an 8-hour workday.[7] In determining that the Plaintiff met these requirements, the ALJ relied in part on the opinions by Dr. Wienecke, Dr. Hensley, Dr. Graham, and Dr. Rees.

Dr. Wienecke, a neurological surgeon, said that Mr. Bryant could not push, pull, or lift something that weighed more than 25 pounds.[8]

---

[5]   *See* R. at pp. 21-22.

[6]   R. at pp. 21-22.

[7]   *See* 20 C.F.R. § 404.1567(b) (lifting); Social Security Ruling 83-10, *Titles II and XVI: Determining Capability to do Other Work-the Medical-Vocational Rules of Appendix 2*, 1983 WL 31251, at *5 (1983) (standing or walking).

[8]   R. at p. 216.

Dr. Hensley evaluated Mr. Bryant for his workers-compensation claim and said that his back symptoms didn't involve a "temporary total disability."[9]

Dr. Graham treated the Plaintiff and found a satisfactory ability to sit, stand, walk, and lift.[10]

Dr. Rees, a consulting examiner, stated that Mr. Bryant could lift or carry 20 pounds, frequently lift or carry 10 pounds, stand or walk about 6 hours each work-day, and sit about 6 hours in a work-day.[11]

The administrative law judge acknowledged that one physician, Dr. Lance Rosson, had conducted two evaluations and assessed a temporary disability based on back ailments that intensified with movement.[12] But the ALJ disagreed with Dr. Rosson because his opinions conflicted with: (1) mild results on objective imaging, and (2) contrary opinions by the State and Doctors Wienecke, Hensley, and Graham.[13]

Although the ALJ summarized his rationale in a boilerplate sentence, he also explained that he was relying on the opinions of four doctors and rejecting the assessment of a fifth physician.

---

[9]   R. at pp. 229, 233.

[10]  R. at p. 245.

[11]  R. at p. 291.

[12]  R. at p. 21.

[13]  R. at pp. 21-22.

Other Factors Bearing on Credibility

The administrative law judge not only discussed the medical evidence but also explained that he was relying on other factors, such as:

- Mr. Bryant's statement that he could work when he was asking for unemployment compensation,

- his work involving carpentry, fencing, automobile repair, and animal care, and

- his performance of daily chores.[14]

The administrative law judge supported these credibility findings with record citations.[15]

As the Plaintiff says, the ALJ did use a boilerplate sentence to summarize his credibility assessment. But, the judge did not stop there. He went on to explain that he was relying on: (1) medical opinions by four doctors, and (2) activities by Mr. Bryant. Because the judge explained his reasons for the credibility assessment, the inclusion of one boilerplate sentence does not require reversal.[16]

C.   Reference to the RFC Findings

In *Bjornson v. Astrue*, the court noted that in the boilerplate sentence, the ALJ had referred to the *above* RFC assessment even though that assessment had actually come later

---

[14]   *See* R. at pp. 20-21.

[15]   *See* R. at pp. 20-21, 35, 67-68, 70-72, 159-62, 255-56, 262.

[16]   *See, e.g.*, *Jackson v. Astrue*, No. CIV-11-440-M, 2012 WL 831351, at *7-8 (W.D. Okla. Feb. 13, 2012) (unpublished report by magistrate judge, holding that the explanation for the credibility assessment was sufficient — notwithstanding inclusion of a similar boilerplate sentence — because the ALJ had spelled out his reasons), *adopted*, 2012 WL 830505 (W.D. Okla. Mar. 9, 2012) (unpublished order by district judge).

in the decision.[17] Mr. Bryant claims that the ALJ had made the same mistake here, referring to the *above* RFC assessment even though it didn't appear until later in the decision. The Plaintiff is mistaken. The ALJ stated the RFC findings on page 19 of the record, and the boilerplate language appeared on page 20. Thus, when the ALJ used the boilerplate language, there wasn't any mistake in the reference to the *above* RFC assessment.

III.     Reliance on the Grids at Step Five

Mr. Bryant makes a conclusory claim that the presence of nonexertional impairments – pain and obesity – prevented reliance on the grids at step five.[18] According to Mr. Bryant, the judge should have obtained testimony from a vocational expert about the potential jobs. This argument is unconvincing.

The grids can be used even when the claimant has nonexertional impairments so long as they don't limit the types of jobs the claimant could perform.[19] The nonexertional impairments didn't limit the jobs here because the ALJ concluded that Mr. Bryant could

---

[17]     *Bjornson v. Astrue*, 671 F.3d 640, 646 (7th Cir. 2012).

[18]     The Medical Vocational Guidelines, commonly known as "the grids," reflect the existence of jobs in the national economy at various skill, exertional, and educational levels. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2. When all factors coincide with the criteria of a Grid Rule, then the administrative law judge can rely on the Rule to establish the existence of jobs. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Sec. 200.00(b). Thus, "'[t]he grids are a shortcut that eliminate the need for calling in vocational experts.'" *Trimiar v. Sullivan*, 966 F.2d 1326, 1332 (10th Cir. 1992) (citation omitted).

[19]     *See Gossett v. Bowen*, 862 F.2d 802, 807-08 (10th Cir. 1988) ("The presence of nonexertional impairments precludes reliance on the grids only to the extent that such impairments limit the range of jobs available to the claimant." (citation omitted)); *see also Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988) ("Use of the Grids is only precluded to the extent that nonexertional impairments further limit the claimant's ability to perform work at the applicable exertional level." (citation omitted)).

perform a full range of light work. And, Mr. Bryant does not identify any nonexertional limitations from his pain or obesity that would interfere with his ability to work. Because the nonexertional impairments didn't limit the type of work Mr. Bryant could perform, the ALJ could rely on the grids.[20]

IV.   Notice of the Right to Object

Any party may file written objections with the Clerk of the United States District Court, Western District of Oklahoma.[21] The deadline for objections is October 22, 2012.[22] The failure to file timely objections would result in waiver of the right to appeal the suggested ruling.[23]

V.   Status of the Referral

The referral is discharged.

Entered this 4th day of October, 2012.

Robert E. Bacharach
United States Magistrate Judge

---

[20]   *See Howard v. Barnhart*, 379 F.3d 945, 948-49 (10th Cir. 2004) (when the administrative law judge reasonably found a full range of light activity, even though the claimant had nonexertional impairments involving pain and obesity, the "ALJ did not err by relying on the grids to reach his ultimate conclusion that claimant was not disabled").

[21]   *See* 28 U.S.C.A. § 636(b)(1) (West 2011 supp.).

[22]   *See* Fed. R. Civ. P. 6(a)(1)(C), 6(d), 72(b)(2).

[23]   *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).